UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

BRIAN MOORE, et al.,

          **Plaintiffs,**                    **Case No. 2:08-cv-224**
                                                **JUDGE GREGORY L. FROST**
      **v.**                               **Magistrate Judge Terence P. Kemp**

JENNIFER BRUNNER,
in her official capacity as Ohio
Secretary of State,

          **Defendant.**

## OPINION AND ORDER

This matter is before the Court for consideration of Plaintiffs' Motion for Preliminary Injunction (Doc. # 2) and its memorandum in support (Doc. # 3), Defendant's memorandum in opposition (Doc. # 9), and Plaintiffs' reply memorandum (Doc. # 10). The reasons that follow, this Court finds the motion well taken.

### I. Background

The following facts briefly summarize the evidence submitted to the Court. The findings of fact and conclusions of law made herein in connection with the request for injunctive relief are not binding at a trial on the merits. *See United States v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2004) (citing *Univ. of Texas v. Camenisch,* 451 U.S. 390, 395 (1981)).

Plaintiff Brian Moore is a Florida resident and the Socialist Party candidate for President in the 2008 election. He seeks to run as an independent candidate in Ohio, which means that Ohio law requires him to collect a minimum of 5,000 qualified elector signatures on part-petitions in order to gain access to the ballot. State law also requires that the petition circulators

who obtain the signatures of qualified electors be both Ohio residents and registered to vote in the state.

Plaintiff Deron Mikal is a Florida resident who is registered to vote in that state. Thus, in accordance with a declaration that he has filed with the Court, Mikal is neither an Ohio resident nor registered to vote in Ohio. He nonetheless seeks to circulate part-petitions on behalf of Moore so that Moore can qualify for the 2008 state presidential ballot. (Doc. # 8.) Like Mikal, Plaintiff Sherry Suter also seeks to circulate part-petitions on behalf of Moore. She is also not registered to vote in Ohio, but unlike Mikal, Suter is an Ohio resident.

On March 7, 2008, Plaintiffs filed a four-count complaint in which they challenge as unconstitutional the relevant residence and registration requirements set forth in Ohio law. (Doc. # 1.) Plaintiffs also filed on that same day a motion for a preliminary injunction. (Doc. # 2.) Pursuant to S.D. Ohio Civ. R. 65.1(a), the Court therefore held a March 11, 2008 informal preliminary telephone conference with counsel for Plaintiffs and Defendant Jennifer Brunner, who is Ohio's Secretary of State. As a result of discussions held at that conference and by agreement of the parties, the Court established a briefing schedule; the parties indicated that the motion could be decided on briefs, without the need for an oral hearing. The parties have completed briefing the issues involved, and the preliminary injunction motion is ripe for disposition.

## II. Discussion

### A. Standard

The Sixth Circuit Court of Appeals has explained the inquiry involved in addressing a motion for a preliminary injunction:

"When ruling on a motion for [injunctive relief], a district court must consider and balance four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction."

*Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 432 (6th Cir. 2004) (quoting *Blue Cross & Blue Shield Mut. of Ohio v. Columbia/HCA Healthcare Corp.,* 110 F.3d 318, 322 (6th Cir.1997) (citations omitted)).  *See also Edward Rose & Sons*, 384 F.3d at 261 (quoting *Washington v. Reno*, 35 F.3d 1093, 1099 (6th Cir. 1994)).  That court has further explained that a district court should not consider the foregoing factors as prerequisites to be met; rather, these factors are to be balanced in a weighing of the equities involved.  *Edward Rose & Sons*, 384 F.3d at 261.  The moving party must demonstrate a right to injunctive relief by clear and convincing evidence.  *Patio Enclosures, Inc. v. Herbst*, 39 F. App'x 964, 969 (6th Cir. 2002); *Honeywell, Inc. v. Brewer-Garrett Co.*, 145 F.3d 1331, 1998 WL 152951, at *3 (6th Cir. 2002) (unpublished table decision).

## B.  Likelihood of Success

The first factor this Court must weigh in determining whether preliminary injunctive relief is warranted is whether Plaintiffs have established a substantial likelihood or probability of success on the merits.  Having considered the written submissions in this case, the Court concludes that Plaintiffs have demonstrated a sufficient likelihood of prevailing on the merits.

At the heart of this litigation is Ohio Rev. Code § 3503.06, which provides:

No person shall be entitled to . . . circulate any declaration of candidacy or any nominating, or recall petition, unless the person is registered as an elector and will have resided in the county and precinct where the person is registered for at least thirty days at the time of the next election.

Ohio Rev. Code § 3503.06(A).  On its face, the statute sets forth a registration requirement (*i.e.*, being an elector) and a residency requirement (*i.e.*, thirty days residency where registered).

Plaintiffs argue that both requirements are unconstitutional.  They first posit that Ohio cannot constitutionally prohibit unregistered voters from circulating petitions pursuant to the rationale of *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182 (1999).  In *Buckley*, the United States Supreme Court addressed whether a state could prohibit unregistered voters from circulating petitions for ballot initiatives.  The Supreme Court concluded that because the requirement that circulators be registered voters (as opposed to voter-eligible individuals) decreased the pool of potential circulators, the requirement imposed an unjustified burden on political expression by limiting both the number of voices that could be heard supporting the initiative at issues and the number of individuals who would consequently hear the message.  *Id.* at 194-95.  The registration requirement therefore failed to pass constitutional muster.  *Id.* at 197.

Plaintiffs correctly note that Chief Justice Rehnquist, writing in dissent, argued that the majority's holding means that "if initiative petition circulation cannot be limited to electors, it would seem that a State can no longer impose an elector or residency requirement on those who circulate petitions to place candidates on ballots, either."  *Id.* at 232 (Rehnquist, C.J., dissenting). The Chief Justice even pointed to Ohio Rev. Code § 3503.06 as an example of a state statute that would therefore apparently be in "serious constitutional jeopardy."  *Id.* at n.3.

Defendant argues that application of the *Buckley* rationale is not appropriate here because this is a facial challenge and because the case presents many factual questions as to the actual effect of the registration requirement.  She argues, on behalf of the state, that development of the

4

record *might* reveal that there are so many potential qualifying circulators in Ohio that the actual effect of the registration requirement on political speech would be minimal.  Plaintiffs disagree that they are bringing a facial challenge, but argue that even if they are, they must nevertheless prevail because they are essentially challenging the statutory registration requirement on overbreadth grounds.

Defendant's "possibility-equals-no-likelihood-of-success" argument unduly minimizes the scope of *Buckley*'s rationale.  That decision teaches that where a state registration requirement such as the one here exists, it must overcome exacting scrutiny to satisfy constitutional considerations.  Plaintiffs need not demonstrate to a certainty that they will prevail; rather, they must establish to a probability that they will succeed on the merits.  The ease with which a potentially qualifying circulator can apply to become a registered elector even after obtaining signatures but prior to filing does not, as Defendant suggests, obviate the fact that such registration is required.[1]  It also does not inform the burden on the core political speech of individuals who seek to engage in such speech by working for a candidate, but who cannot register.

---

[1]  The Court recognizes that the Ohio Supreme Court declined to declare Ohio Rev. Code § 3503.06(A) unconstitutional in the post-*Buckley* case of *State ex rel. Oster v. Lorain County Board of Election*, 93 Ohio St.3d 480, 756 N.E.2d 649 (2001).  The rationale of that non-binding decision–which salvaged § 3503.06(A) by construing the statute not to require that unregistered circulators be registered electors *at the time that they circulate* part-petitions–does not resolve the issues involved here, which involve whether the registration requirement itself is permissible. Later registration is still required registration and would still manage to quell the political speech of individuals such as Suter, who will not register.  At the very least, it would effectively negate the point of that speech, because the efforts of the circulator who declines to register would be of no ultimate effect.  Letting another speak while guaranteeing that what is said will go unheard is burdening speech; it is rendering even the loudest speaker essentially mute by ensuring that the audience is deaf.

By making political speech more difficult, the Ohio scheme "virtually guarantee[s] that there will be less of it." *Citizens for Tax Reform v. Deters*, 518 F.3d 375, 388 (6th Cir. 2008) (addressing circulator compensation regulation). Although Plaintiffs have failed to present much evidence of the impact of the registration requirement, the inherent nature of the requirement speaks in a limited but inescapable way to its effect. Moreover, Defendant has notably failed to produce evidence of the necessity of the law to achieve a lawful and desirable purpose, such as to prevent voter fraud. Thus, in this near vacuum of evidence, the Court is left with a law that undeniably imposes a burden with scant contemporary evidence of a need for such a law or how it achieves fulfilling whatever worthwhile and permissible need it purportedly exists to fulfill. Plaintiffs are therefore likely to prevail on their attack on the registration requirement.

The residency requirement fares equally unwell. As Plaintiffs correctly note, "[t]his requirement . . . is directly tied to voter registration." (Doc. # 3, at 6.) Ohio requires that a circulator "have resided in the county and precinct where the person is registered for at least thirty days at the time of the next election." Ohio Rev. Code § 3503.06(A). Defendant paints this as simply "an in-*state* residency requirement" (Doc. # 9, at 9), but this is an oversimplification of the statute. Section 3503.06(A) of course requires state residency, while also requiring residency in a specific county and even a specific precinct. These narrowing requirements do not impose only the requirement that a circulator reside in Ohio. They also impose the requirement that he or she be registered. Residency is wholly tied to registration–as Plaintiffs argue, "§ 3503.06(A) defines residence in terms of registration" (Doc. # 3, at 6)–which means that the Court could not uphold the existing residency requirement if the registration requirement fails.

6

This last point is important because the residency requirement assumes registration.  In other words, the one requirement subsumes the other for purposes of today's analysis.  Even if the words "is registered as an elector" did not appear in the statutory scheme, a registration requirement would still exist as a result of the words "where the person is registered."  Ohio Rev. Code § 3503.06(A).  The registration requirement cannot be severed from the residency requirement as Defendant suggests (Doc. # 9, at 16 n.2) because the location in which there is registration provides where the elector must have lived for the specified period.  To illogically sever registration from the residency requirement pursuant to Ohio Rev. Code § 1.50 would mean that there is no fixed location for residency left.  But the plain language of the statute does not permit such a construction; severance would render the residency provision nonsensical.  Under the only reasonable construction of the statute as it is written, the contingent residency requirement must necessarily fail if the entangling, precursor registration requirement fails.  They are both flawed for the same reason, regardless of moot (for injunctive relief purposes) durational concerns over which the parties disagree and on which this Court need not and does not opine.

Defendant argues that residency requirements are permissible, and this Court agrees.  But it is not so much a problem that there is *a* residency requirement, but that *this* residency requirement is also essentially a backdoor registration requirement.  It is the execution of the residency requirement set forth in Ohio Rev. Code § 3503.06(A) and not the mere existence of a residency requirement that proves problematic today.  Therefore, Plaintiffs are also likely to prevail in their challenge to the residency requirement, which itself imposes a *de facto* registration requirement.

This Court concludes that Plaintiffs have demonstrated a substantial likelihood or probability of success on the merits. *Buckley* and its progeny teach that the registration requirement set forth in Ohio Rev. Code § 3503.06 offends constitutional considerations by impermissibly limiting First Amendment speech. Because this requirement imposes a significant burden on a core political speech right that is not narrowly tailored, Plaintiffs are likely to prevail, and because the residency requirement cannot stand apart from the wholly intertwined registration requirement, it is also likely to fail.[2] This is not to say that any residency requirement would invariably run afoul of constitutional protections. Rather, the narrow holding of today's decision is simply that this *specific* residency requirement, which is enmeshed with the registration requirement, presents a constitutional problem. Accordingly, the first factor weighs heavily in favor of granting injunctive relief.

### C.  Irreparable Injury

The second factor the Court must consider is whether Plaintiffs have demonstrated a risk of  irreparable harm. In conclusory fashion, Plaintiffs note that such a risk is readily apparent because the time in which to collect signatures is running short. Defendant does not present extended discussion on this factor. The Court agrees with Plaintiffs and concludes that the second factor also weighs in favor of granting injunctive relief.

### D.  Substantial Harm

The third factor that the Court must consider is whether issuance of the requested injunction will cause substantial harm. Plaintiffs of course assert that it will not, and although

---

[2]  Because the First Amendment issue proves dispositive of the motion under consideration, the Court need not and does not address the remaining constitutional provisions at issue in this case.

8

Defendant does not address this factor separately, her briefing suggests that non-enforcement would open the door to fraud.  There is little to no evidence in the record supporting this contention, which means that the third factor also favors injunctive relief.

### E.  Public Interest

The fourth and final factor to consider is whether issuance of an injunction is in the public interest.  It is axiomatic that adherence to constitutional protections is always in the public interest.  Consequently, all four preliminary injunction factors therefore weigh in favor of issuance of injunctive relief here.

### F.  Security Bond

Federal Rule of Civil Procedure 65(c) provides that "[n]o . . . preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined."  Although this language would appear to mandate a bond, the Sixth Circuit has explained that whether to require a bond is within the discretion of the Court.  *See Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995).  It is well settled that in light Rule 65(c) and "the inherent equitable power [of the Court] to condition an injunction on certain undertakings, including the posting of a security bond by the party seeking the injunction," *Division No. 1, Detroit, Bhd. of Locomotive Eng'rs v. Consol. Rail Corp.*, 844 F.2d 1218, 1225 (6th Cir. 1988) (citation omitted), the Court can require the posting of a security bond even if no party requests it.

Asking that no bond be required, Plaintiffs note that the granting of preliminary injunctive relief does not pose a risk of economic harm to Defendant.  Defendant in turn fails to

address the issue of a bond in her briefing.  Having considered the equitable circumstances of this case, the Court in its discretion concludes that no posting of a bond is warranted.

### III.  Conclusion

Having so weighed the foregoing considerations, the Court **GRANTS** Plaintiffs' motion for a preliminary injunction.  (Doc. # 2.)  The Court **ORDERS** that Defendant is hereby **ENJOINED** and shall refrain from enforcing or applying, or directing or commanding any other state or local official to enforce or apply, Ohio Rev. Code § 3503.06(A) to Plaintiffs and any other persons who circulate part-petitions on behalf of any candidate for President in the State of Ohio.  Pursuant to Fed. R. Civ. P. 65(c), the Court in its discretion does not require Plaintiffs to post a bond with the Clerk of Courts of the United States District Court for the Southern District of Ohio.

**IT IS SO ORDERED**.

      /s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE