IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**BRIAN MOORE, et al.,**

    **Plaintiffs,**

v.

**JENNIFER BRUNNER, in her Official Capacity as Ohio Secretary of State,**

    **Defendant.**

Case No. 2:08-CV-224
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge King

## OPINION AND ORDER

This matter came before the Court on Plaintiffs', Socialist Party USA, Brian Moore and Stewart Alexander (collectively, the "Plaintiffs" or "Socialist Party"), Second Motion for Preliminary Injunction. (Doc. #22). Plaintiffs are a minor political party and its candidates for the office of President and Vice President in the November, 2008 general election. Defendant is the Ohio Secretary of State. Plaintiffs seek an order directing Defendant to place the Socialist Party and its candidates on the 2008 general election ballot for the state of Ohio. For the reasons that follow, Plaintiffs' Motion is **GRANTED**.

1

**I.**

This case began as a challenge to Ohio's laws restricting circulators of petitions for candidacy, brought by and on behalf of the Socialist Party's Presidential and Vice Presidential candidates. At the time of filing their Complaint, Plaintiffs Moore and Alexander were in the process of gathering signatures sufficient in number to qualify as independent candidates in the upcoming presidential election. On June 2, 2008, Judge Frost granted Plaintiffs' first motion for preliminary injunction, and ruled that the Secretary of State could not enforce the restrictions of Ohio Rev. Code §3503.06(A) to disqualify petitions circulated by unregistered voters and/or non-residents. (Opinion and Order, Doc. #13).

In a then-unrelated case, this Court granted a preliminary injunction on July 17, 2008, ruling in favor of the Libertarian Party of Ohio, and holding that the Secretary of State lacked the authority to promulgate Directive 2007-09, discussed below, in the absence of express delegation from the General Assembly. *Libertarian Party of Ohio v. Brunner*, Case No. C2-08-555 (S.D. Ohio). The Directive purported to remedy Ohio's unconstitutional ballot access law, Ohio Rev. Code §3517.01(A)(1), struck down by the Sixth Circuit Court of Appeals in *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579 (6th Cir. 2006).

Subsequent to this Court's decision in *Libertarian v. Brunner*, the Socialist Party amended its Complaint to challenge Directive 2007-09, and now seeks a preliminary injunction to enjoin Defendant from enforcing the Directive as to Socialist Party USA.[1] While the facts are

---

[1] After Plaintiffs amended their Complaint, the Secretary of State moved to have this case consolidated and transferred to Judge Sargus "to ensure legally consistent outcomes for parties seeking to appear on the November ballot." Plaintiffs did not oppose Defendant's motion, which was granted on August 5, 2008. (Doc. #27).

2

not in dispute, the parties disagree as to the standard a minor party must meet to attain access to the ballot in the absence of a constitutional State law governing ballot access.

Prior to the Sixth Circuit Court of Appeals' decision in *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579 (6th Cir. 2006), a minor party could qualify for the 2008 general election ballot by: 1) obtaining valid signatures of Ohio electors equal to at least one percent of the votes cast for governor in the 2006 general election (40,227); 2) filing the signatures and petition 120 days before the March 4, 2008 primary election; 3) nominating their candidates at the March 4, 2008 primary election. Ohio Rev. Code §§3501.01(F)(3), 3517.021, 3501.01(E).

In *Blackwell*, the Court of Appeals considered the Libertarian Party of Ohio's challenge to Ohio's requirements, and held that collectively, they created an unconstitutional burden on First Amendment rights. The early filing deadline requiring minor parties to gather thousands of signatures one year in advance of a general election imposed a "severe burden" that was not "narrowly drawn to advance a state interest of compelling importance." *Blackwell*, 462 F.3d at 593. The Court of Appeals discussed ballot restrictions in other states at length, finding no other states as restrictive as Ohio. Of the seven other states that require political parties to nominate candidates through the primary process, Ohio imposed the most stringent requirements. For example, while California and Mississippi had October and January filing deadlines, respectively, neither state had a signature requirement in presidential election years. *Id.* at 589. The four other primary states have filing deadlines of April or later. *Id.* at n.10.

Considering the entire statutory scheme, the Court held:

> Ohio is well within its authority to mandate primary elections, to limit all parties to one primary date, or to require filing a petition in advance of the primary for administrative purposes. Viewed individually, each of these requirements may

3

> only impose a reasonable burden on constitutional rights. In practice, however, the combination of these laws imposes a severe burden on the associational rights of the LPO, its members, and its potential voter-supporters. As the state has not shown that these laws are narrowly tailored to protect a compelling state interest, we find that the Ohio system for minor party qualification violates the First Amendment of the Constitution.

*Blackwell*, 462 F.3d at 595.

Following the Court of Appeals' decision, in the absence of legislation from the Ohio General Assembly enacting new constitutional ballot access procedures, the Ohio Secretary of State issued a Directive dated May 21, 2007. The Directive requires a minor political party to: 1) obtain petition signatures equal to one-half of one percent of the votes cast for governor in the 2006 general (20,114); 2) file nominating petitions 100 days before the primary. The Directive left unchanged the requirement that minor parties nominate their candidates by primary election. The Directive contains an additional provision, allowing political parties that do not participate in the primary to be granted party status for the purposes of certifying presidential and vice presidential candidates only, by filing a petition with 20,113 valid signatures by August 18, 2008.

As of July 21, 2008, the date of filing its Second Motion for Preliminary Injunction, the Socialist Party concedes that it has not filed any signatures with the Secretary of State. They have, however, collected "over 2000" signatures as part of the effort to qualify its candidates to run as independents. State law requires independent candidates to collect and file 5000 valid signatures by August 21, 2008; as of August 15, Moore and Alexander represented that they "hope[] to collect enough signatures to gain access as independent candidates in Ohio should the Socialist Party USA not win ballot access in this suit." (Pls' Reply Mem., Doc. 30, at 10).

4

## II.

In considering a request for preliminary injunction, the district court is to consider the following: (1) the likelihood that the movant will succeed on the merits, (2) whether the movant will suffer irreparable harm without the injunction, (3) the probability that granting the injunction will cause substantial harm to others and (4) whether the public interest will be advanced by issuing the injunction. *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 380 (6th Cir. 2006), citing *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 399 (6th Cir. 1997). "In making its determination, the district court is required to make specific findings concerning each of the four factors, unless fewer factors are dispositive of the issue." *Id.* The foregoing are "factors to be balanced, not prerequisites that must be met. Accordingly, the degree of likelihood of success required may depend on the strength of the other factors." *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985). The moving party must demonstrate a right to injunctive relief by clear and convincing evidence. *Patio Enclosures, Inc. v. Herbst*, 39 F.App'x 964, 969 (6th Cir. 2002).

    a) *Likelihood of Success on the Merits*

This Court has already determined the issue of the constitutionality of Directive 2007-09. In *Libertarian Party v. Brunner*, the Court found that the Secretary of State does not have the statutory or constitutional authority to "fill[] a void in Ohio's election law caused by the legislature ignoring a judicial pronouncement declaring a state statute unconstitutional." Moreover, applying the *Anderson/Burdick* balancing test, Court held that the Directive "imposes unconstitutional burdens on First Amendment rights and is invalid as to all Plaintiffs, including LPO's candidates for both state and federal office." *Libertarian Party of Ohio v. Brunner*, Case

5

No. 08-555, Doc. #19, Opinion and Order at 10, following *Blackwell*, 462 F.3d at 585-87. *See Anderson v. Celebrezze*, 460 U.S. 780 (1983); *Burdick v. Takushi*, 504 U.S. 428 (1992).

Based on this Court's constitutional analysis of Directive 2007-09 in *Libertarian Party of Ohio v. Brunner*, which is incorporated herein, the Court finds it likely that Plaintiffs will prevail on their challenge to the constitutionality of Directive 2007-09.

  b. *Irreparable Harm to the Moving Party*

The irreparable harm to Socialist Party and its candidates is denial of access to the ballot. The Court finds that the violation of Plaintiffs' First Amendment rights constitutes irreparable injury for which injunctive relief is an appropriate remedy.

  c. *Harm to Others and the Public*

In *Blackwell*, the Sixth Circuit expressed a preference for the "political dialogue and free expression" engendered by the presence of multiple parties on the ballot. *Blackwell*, 462 F.3d at 594. Concomitantly, the State has a compelling interesting in establishing standards by which to judge whether a party has the "requisite community support" in order to avoid "laundry list" ballots. Here, as in *Libertarian Party of Ohio v. Brunner*, "the State has made no showing that the voters of Ohio, who are able to cast an effective ballot featuring several independent candidates, would be flummoxed by a ballot featuring multiple political parties." *Blackwell*, 462 F.3d at 594. Plaintiffs posit that, under any standard, a maximum of six political parties could potentially make a sufficient showing of community support to be on Ohio's ballot. (Pls' Reply at fn2, discussing the potential effect of the Court's decision in *Libertarian Party of Ohio v. Brunner* on the Constitution and Green Parties). That fact is not disputed by Defendant.

Accordingly, there is little risk of harm to the public in terms of causing a disorderly election process or ballot confusion.

The Court therefore finds that each of the four preliminary injunction factors weighs in favor of Plaintiffs' request for injunction relief.

### III.

The parties agree that, because the Ohio General Assembly has failed to prescribe constitutional ballot access requirements, the Court looks for guidance to the Sixth Circuit Court of Appeals in *Goldman-Frankie v. Austin*, 727 F.2d 603, 607 (6th Cir. 1984). In confronting a recalcitrant Michigan legislature, the Court held:

> Despite existing legal precedent, particularly *McCarthy v. Austin*, supra, wherein the Michigan scheme was expressly declared unconstitutional for its failure to provide independent candidates for public office with a means of access to the ballot, the Michigan legislature continued to ignore the evolving judicial pronouncements as late as the 1980 presidential election. In that election Gus Hall and Angela Davis, running as independent candidates in Michigan for president and vice-president, respectively, were forced to resort to the federal court to obtain ballot position. *Hall v. Austin*, 495 F. Supp. 782 (E.D. Mich. 1980).
>
> Michigan has, to date, failed to remedy the situation. This Court is therefor compelled to again declare, in absolute terms, that the Michigan election laws, so far as they foreclose independent candidates access to the ballot, are unconstitutional.

*Id.*

To remedy the unconstitutional ballot access procedures in Michigan, the Court of Appeals affirmed the district court's decision ordering Plaintiff Goldman-Frankie, a relatively unknown Communist Party candidate for the State Board of Education, to be placed on the ballot. As instructed by the Supreme Court in *McCarthy v. Briscoe*, 429 U.S. 1317, 1323 (U.S.

7

1976), "[i]n determining whether to order a candidate's name added to the ballot as a remedy for a State's denial of access, a court should be sensitive to the State's legitimate interest in preventing 'laundry list' ballots that 'discourage voter participation and confuse and frustrate those who do participate.'" (*quoting Lubin v. Panish*, 415 U.S. 709, 715 (1974)). But where a state has unconstitutionally prevented a party or a candidate from accessing the ballot, "a court may properly look to available evidence or to matters subject to judicial notice to determine whether there is reason to assume the requisite community support." *See McCarthy v. Briscoe*, 429 U.S. at 1323.

The parties agree that the sole issue in this case is whether the Socialist Party USA has shown the "requisite community support" sufficient to gain access to the Ohio ballot in the November 4, 2008 general election. As set out in *Libertarian Party v. Brunner*, "[t]he Court will not prescribe constitutional election procedures for the state, but in the absence of constitutional, ballot access standards, when the 'available evidence' establishes that the party has 'the requisite community support,' this Court is required to order that the candidates be placed on the ballot." Case No. 08-555, Doc. #19 (*quoting McCarthy*, 429 U.S. at 1323).

*Goldman-Frankie* established that a showing of support need not be "compelling" but rather, "sufficient." The Court finds that the Socialist Party USA has the requisite community support to be placed on the ballot in the state of Ohio based on the following undisputed facts in the parties' memoranda. Socialist Party USA has a century-long history of involvement in presidential politics. (Pls' Mem., Doc. #23, at 2-4). The Party held its last biennial convention in St. Louis, Missouri in October, 2007, at which time it nominated Moore and Alexander as its candidates. Socialist Party candidates appeared on the ballot in eight states in the 2004

8

presidential election, and garnered 10,822 votes nationwide. For the upcoming 2008 election, Plaintiffs Moore and Alexander have currently qualified in Vermont, New Jersey and Colorado, and are actively seeking ballot access in 18 other states, including Ohio. "By early September. . . the Moore/Alexander ticket should be on no fewer than ten state ballots, with continuing hopes of reaching perhaps ten more." (Pls' Reply Mem., Doc. #30, at 9). As for a showing of support in Ohio, the Socialist Party "has an active state affiliate in Ohio with a Charter and state officers" since at least 1999. (Id. and Doc. #23 at 6). The party has gathered several thousand signatures of Ohio residents.[2]

As in *Libertarian Party of Ohio v. Brunner*, this Court does not intend to regulate Ohio's elections, establish election laws or ballot-access procedures, or to otherwise take on the constitutional and statutory duties of Ohio's General Assembly and Secretary of State. Rather, the Court's decision placing the Socialist Party USA on the Ohio ballot is limited based on the facts set out above showing requisite support for this established minor party, and the absence of any State law governing ballot access for minor political parties. Moreover, as the Court of Appeals stated in *Goldman-Frankie*, "it would be understandable if the courts looked with increasing disfavor on the State's arguments regarding requisite support for a candidate when the State possesses the power to establish a uniform method of assuring such support and continuously refuses to do so." 727 F.3d at fn4.

---

[2] Plaintiffs efforts were hampered by Ohio Rev. Code §3503.06(A), requiring that petitions circulators be both Ohio residents and registered to vote in the State. That statute was declared unconstitutional by Judge Frost, in this now-consolidated case, in the Court's Opinion and Order dated June 2, 2008. (Doc. #13).

## IV.

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion for Preliminary Injunction (Doc. #22), and **ORDERS** that Plaintiffs Brian Moore and Stewart Alexander be placed on the 2008 general election ballot for the state of Ohio and designated as candidates of the Socialist Party USA.

**IT IS SO ORDERED.**

_8-21-2008_
**DATE**

EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE